1
2
3
4
5                      UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7

8   JAMES ELLIS JOHNSON,                    No. C-13-2405 EMC

9              Plaintiff,

10        v.                                **ORDER (1) GRANTING DEFENDANT
                                            CITY AND COUNTY OF SAN
11  UNITED STATES OF AMERICA, *et al.*,     FRANCISCO'S MOTION TO DISMISS;
                                            AND (2) GRANTING IN PART AND
12             Defendants.                  DENYING IN PART THE UNITED
    _____/       STATES' MOTION TO DISMISS**

13                                          **(Docket Nos. 14, 22)**

14

15        Plaintiff, James Ellis Johnson, a United States veteran, filed a complaint ("Complaint")

16  against the United States; the City and County of San Francisco ("CCSF"), five employees of the

17  San Francisco Veterans Affairs Medical Center ("SFVAMC"), the Mayor of San Francisco; and the

18  Sheriff of the City and County of San Francisco ("Sheriff").  Plaintiff alleges that the Department of

19  Veterans Affairs ("VA") police  ("Police") used excessive force and humiliated him during an arrest,

20  and that the Sheriff stood by and did nothing.  Plaintiff also alleges that the VA unlawfully restricted

21  benefits to which he was entitled.  Plaintiff is pro se.

22        Currently pending before the Court is the United States' motion to dismiss pursuant to

23  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the CCSF's motion to dismiss pursuant

24  to Federal Rules of Civil Procedure 12(b)(6).  Having considered the papers, the Court **GRANTS IN**

25  **PART AND DENIES IN PART** the United States' motion to dismiss with leave to amend.  The

26  Court **GRANTS** the CCSF's motion to dismiss with leave to amend.

27

28

*(left margin, vertical text)* **United States District Court** For the Northern District of California

**United States District Court**
For the Northern District of California

## I.   FACTUAL & PROCEDURAL BACKGROUND

The facts according to the Complaint and attached exhibits ("Exhibits") are as follows. (Facts alleged for the first time in Plaintiff's oppositions ("Oppositions") to the motions are excluded.)  Plaintiff is a 63-year old veteran.  Compl. at 8; Exh. at 56.  On January 30, 2012, Plaintiff visited the SFVAMC for a medical appointment.  Compl. at 6.  Because Plaintiff is under an order of behavioral restriction, he is required to check in with the VA Police upon his arrival. Compl. at 4; Exh. at 28.  Plaintiff checked in with the Police and proceeded to go see the doctor. Exh. at 13.  When he arrived at the doctor's office, a hospital employee called the Police because Plaintiff did not have Police escort.  *Id.*

Plaintiff had been instructed to check in with the Police, but had not been instructed to inform the Police that they must escort him to the doctor.  Exh. at 12, 28.  The SFVAMC states in its letter issuing the order of behavioral restriction: "you will check in with VA Police when you report to the campus and officers will be nearby during your visits.  They will not interfere with your visits unless you become disruptive."  Exh. at 28.  These instructions differed from those in the VA's computers, which said that he was to have Police escort to appointments.  Exh. at 12, 73.

The Police handcuffed Plaintiff.  Exh. at 14.  (The Complaint and Exhibits allege no facts that describe what happened between the VA Police appearing on the scene and handcuffing Plaintiff.)  When Plaintiff asked for the reason for the arrest, the Police said "they did not need any." Exh. at 12.  The Police forced him down the hallway in a lock hold.  Exh. at 14.   Plaintiff told the Police he was in pain because he had a torn rotator cuff in his right shoulder and a limited range of motion in his left.  Exh. at 14.  One of the policemen took Plaintiff's driver's license out of Plaintiff's wallet and affixed it to his badge, saying to Plaintiff and the other policemen that this was his "trophy."  *Id.*  One of the policemen told Plaintiff to "go pay for your own medical care." Compl. at 11.  The Police placed Plaintiff in a holding cell and threatened to come in to beat him up. Exh. at 14.  They came into the cell and "force[d] [Plaintiff's] body into the wall," while Plaintiff was still handcuffed.  Exh. at 14-15.

The Police put Plaintiff in the back of a "small police car."  Exh. at 15.  Because he did not fit, they put Plaintiff "in the little space between the front and back seat floor space."  *Id.* They

1   turned sharply and sped up while turning, so that Plaintiff's shoulders slammed into the fiberglass

2   back seats and wall behind the front seats, deliberately causing him pain.  *Id.*  The Police "took the

3   long way" to the San Francisco County Jail ("Jail").  Exh. at 15, 31.

4           Once they arrived at the Jail, instead of taking Plaintiff inside, the Police sat Plaintiff in a

5   chair "side ways" in the Jail parking lot, for more than two hours, with his hands still handcuffed

6   behind his back.  Exh. at 15, 31.  Plaintiff felt that his arms were being "torn apart," and told the

7   Police repeatedly how much pain he was in.  Exh. at 15-16.  Plaintiff asked whether they could

8   handcuff him to the nearby trashcan to ease the pain, but the Sheriff (who first becomes involved at

9   the Jail) said he "did not care."  Exh. at 16, 31.

10          Once Plaintiff was taken inside, the Sheriff took a booking photo of Plaintiff, but allowed

11  one of the VA Policemen to hold the booking information card and be included in the photo, "to add

12  to [Plaintiff's] humiliation."  Exh. at 31-32.  As the photo was being taken, the VA Policeman said,

13  "this is going to be my trophy."  Exh. at 31.  They gave Plaintiff a copy of the booking photo, but

14  Plaintiff did not recognize himself.  Exh. at 17, 33.  Later, the police records office said it was a

15  photo of Plaintiff taken on August 19, 1999.  Exh. at 33.  This is not possible because Plaintiff was

16  not at the Jail on that date and, in fact, had undergone an operation.  *Id.*

17          Plaintiff was put in a cell and was released eight hours later with an order that he appear in

18  court on February 6.  Exh. at 16.   When he appeared in court, however, he was told there were no

19  charges against him.  *Id.*  At the Jail, Plaintiff had been booked for "disturbing the peace by loud

20  noise" and "resisting, obstructing, delaying of a peace officer."  Exh. 10-11, 26.

21          As a result of the Police "manhandling" Plaintiff, the rotator cuff in Plaintiff's left shoulder

22  was torn, needing surgery.  Exh. at 10, 13-14.  A doctor at the SFVAMC concluded, based on an

23  MRI taken February 28, 2012, that Plaintiff had a partial tear in the supraspinatus tendon of his left

24  rotator cuff, but her impression was that the shoulder appeared similar to 2006.  Exh. 21-23.  A

25  different doctor, at California Advanced Imaging, concluded, based on an MRI taken March 21,

26  2012, that Plaintiff had a full tear in the left supraspinatus tendon.  Exh. at 24.

27          Plaintiff has had a difficult relationship with the SFVAMC.  The SFVAMC banned Plaintiff

28  from coming to their hospital from March 2007 until July 2011, except to receive care for "life-

**United States District Court**
For the Northern District of California

threatening emergencies." Compl. at 5; Opp. to U.S. Exh. at 22.[1]  Subsequently, in August 2011, Plaintiff was put under an order of behavioral restriction ("OBR").  The letter from the SFVAMC issuing the OBR states that the OBR was issued because Plaintiff had made "threats against staff, including screaming and waving [his] cane in a threatening manner."  Exh. at 28.  Pursuant to the OBR, the SFVAMC placed a "behavioral flag" on Plaintiff in the VA's national computer database.  Compl. at 7; Exh. at 73-74, 76.  Plaintiff alleges that the stated reasons for the behavioral flag "from 2009 to present were all fabricated."  Compl. at 5.

Plaintiff alleges nine causes of action: (1) Staging conflict situations in order to maintain a warning flag in a national computer; (2) Violation of Due Process; (3) Slander; (4) False arrest; (5) Public humiliation; (6) False imprisonment; (7) First degree criminal assault with malice intended on a disabled person; (8) Pain and suffering caused by violent injury; and (9) Torture and terrorism on a disabled person.  Compl. at 9-10.

Plaintiff demands from the United States that criminal charges be brought against the policemen that "beat" Plaintiff on January 30, 2012; that the behavioral flag be removed from the VA's computers; that he be issued a medical card so that he no longer has to receive care at a VA medical center; and $2,075,000.  Compl. at 10.  In short, Plaintiff seeks both injunctive relief and damages.  Plaintiff demands from the CCSF payment of 20% of medical expenses and $500,000.  *Id.* As to the CCSF, therefore, Plaintiff seeks only damages.

Oral argument for the present motions had been set for October 17, 2013.  However, Counsel for the United States moved for a ruling on the papers, because he was furloughed due to the federal government shutdown.  *See* Docket No. 50.  The Court granted Counsel's motion.  *See* Docket No. 56.

---

[1] Plaintiff attached to his Opposition, but not to the Complaint, the letter from the SFVAMC informing him of the ban.  Because Plaintiff alleges the ban in his complaint, and the authenticity of the letter is not questioned, the Court may consider the letter without converting this motion to a motion for summary judgment.  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

**II.   DISCUSSION**

A.     Request for Judicial Notice

The Court denies the United States' request for judicial notice.  Courts may only take judicial notice of facts that are not subject to reasonable dispute.  *See* Fed. R. Evid. 201.  The United States has attached two exhibits in a request for judicial notice in support of its motion to dismiss.  *See* Docket No. 22.  One is a record made by the doctor at the SFVAMC with whom Plaintiff had an appointment on the day of the arrest.  It describes the events that led up to the arrest.  The other is a police report of the VA Police that describes the arrest.  Neither is judicially noticeable because they report material facts that are subject to dispute.

B.     Legal Standard

Under Federal Rules of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A district court may lack jurisdiction under a statutory scheme created by Congress that confers jurisdiction over certain claims to specific federal courts and denies jurisdiction over the claims to all other federal courts. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1019-1020 (9th Cir. 2012).  It may also lack jurisdiction over certain tort claims if the plaintiff has failed to exhaust administrative remedies. *See* 28 U.S.C. § 2675.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

2  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

3      A pro se complaint is "to be liberally construed" and "however inartfully pleaded, must be

4  held to less stringent standards than formal pleadings drafted by lawyers." *See Erikson v. Pardus*,

5  551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing the Fed. R.

6  Civ. P. 8(f)'s, now 8(e)'s, mandate to construe pleadings so as to do justice). After *Twombly* and

7  *Iqbal*, a court's "obligation remains, 'where the petitioner is pro se, particularly in civil rights cases,

8  to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v.*

9  *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th

10  Cir.1985) (en banc)) (explaining that *Erikson* was decided after *Twombly*, and that *Iqbal* did not alter

11  courts' treatment of pro se filings).

12  C.    Causes of Action Against the United States

13      1.    Threshold Jurisdictional Questions

14      Before addressing the merits of the causes of action, the Court first considers whether

15  jurisdiction is proper. The United States asserts that Section 511 of Title 38 of the United States

16  Code precludes the Court from exercising jurisdiction over any of Plaintiff's claims. *See* U.S. Mot.

17  at 5. However, as discussed in detail below, Section 511 only precludes the Court from reviewing

18  "a decision by the Secretary under a law that affects the provision of benefits." 38 U.S.C. § 511.

19  Section 511 does not deprive the Court of jurisdiction over Plaintiff's claims for alleged VA police

20  misconduct or constitutional violations, since these do not require the Court to review any benefits

21  decisions.

22      As for monetary damages against the federal government for tortious conduct, the Federal

23  Tort Claims Act ("FTCA") also imposes jurisdictional limitations. The FTCA requires a claimant to

24  present his claim to the "appropriate federal agency" and receive a denial before instituting an action

25  against the United States for money damages for injury. 28 U.S.C. § 2675(a). Once the agency

26  issues a denial, the claimant has six months to institute an action against the United States. *See* 28

27  U.S.C. § 2401(b). If the agency fails to make a "final disposition of a claim within six months after

28  it is filed," the claimant may deem this to be a denial of the claim. 28 U.S.C. § 2675(a).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   Substantively, "the jurisdictional requirement of minimum notice is satisfied by '(1) a written

2   statement sufficiently describing the injury to enable the agency to begin its own investigation, and

3   (2) a sum certain damages claim.'"   *Burns v. United States*, 764 F.2d 722, 724 (9th Cir. 1985)

4   (quoting *Warren v. United States Dept. of the Interior Bureau of Land Management*, 724 F.2d 776,

5   780 (9th Cir. 1984) (en banc); *Avila v. Immigration and Naturalization Service*, 731 F.2d 616, 619

6   (9th Cir.1984)).   "The claim requirement of section 2675 is jurisdictional in nature and may not be

7   waived."   *Id.*

8           Plaintiff presented two claims to the United States.  Plaintiff's first claim, dated April 24,

9   2012, was for $2 million, for False arrest; Public humiliation; False imprisonment; First degree

10  criminal assault with malice intended on a disabled person; and Pain and suffering caused by injury.

11  *See* Exh. at 8.  These causes of action all pertain to the events surrounding Plaintiff's arrest on

12  January 30, 2012.  Plaintiff has satisfied both the procedural and the substantive requirements of

13  Section 2675(a) for these causes of action.  The VA received the claim on April 26, 2012.  *See* Exh.

14  at 69.  Plaintiff filed this action on May 28, 2013, more than six months after the VA received the

15  claim, as permitted under Section 2675(a).  (The VA denied this claim on July 16, 2013.  *See* Docket

16  No. 66.)  Plaintiff attached, among other documents, the letter to Judge Beeler, which describes the

17  events of January 30, 2012, and medical reports concerning his shoulder injury.  *See* Docket No. 66,

18  Exh. A.

19          Plaintiff's second claim, dated August 16, 2012, was for $75,000, for Staging conflict

20  situations in order to maintain a warning flag in a national computer; Violation of Due Process; and

21  Slander.  *See* Exh. at 2.  Plaintiff has satisfied the requirements of Section 2675(a) for the causes of

22  action listed in the second claim.  The VA denied Plaintiff's second claim on November 29, 2012.

23  Plaintiff filed this action on May 28, 2013, within six months of the denial, as required under

24  Section 2401(b).  Plaintiff attached two letters, one from the SFVAMC to Congresswoman Pelosi

25  and the other from Congresswoman Pelosi to Plaintiff.  *See* Exh. at 6-7.  Congresswoman Pelosi's

26  letter conveys that Plaintiff had complained to her of the behavioral flag.  In its letter, the SFVAMC

27  tells Congresswoman Pelosi that "Mr. Johnson continues to verbally abuse our staff and has had

28  incidents in the past where his verbal abuse has escalated to violent behavior . . . ."  Plaintiff states in

United States District Court

For the Northern District of California

1    his claim that this is "an outright lie" and that the SFVAMC "staged" "situations"  Exh. at 3.  This is

2    sufficient to give the VA notice of Plaintiffs' claims for "Staging conflict situations in order to

3    maintain a warning flag in a national computer" and Slander.  While it is less clear that it gives

4    notice Plaintiff's Due Process claim for issuing the behavior flag without a hearing, this claim does

5    not sound in tort.  As will be discussed below, monetary damages for a Due Process violation would

6    in any case be barred by sovereign immunity.

7         Thus the Court has jurisdiction over Plaintiff's tort claims against the United States for

8    damages since he has satisfied the pre-filing requirement under the FTCA.  The Court thus addresses

9    the merits of his claims.

10        2.    Staging Conflict Situations in Order to Maintain a Warning Flag in a National

11             Computer and Slander

12        This cause of action seems to be based on Plaintiff's belief that the VA Police arrested him,

13   at least in part, to maintain the behavioral flag.  *See* Compl. at 4-5.  There is no obvious,

14   denominated cause of action for what Plaintiff is claiming.  To the extent that Plaintiff is alleging

15   fraud, the FTCA exempts the United States from liability for fraud committed by an employee.  *See*

16   28 U.S.C. § 2680(h); *Owhnee Grazing Ass'n Inc. v. Field*, 637 F.2d 694, 697 (9th Cir. 1981).  To the

17   extent that Plaintiff is alleging defamation, the United States cannot be liable for slander or libel by

18   an employee.  *See* 28 U.S.C. § 2680(h); *Moore v. United Kingdom*, 384 F.3d 1079, 1088 (9th Cir.

19   2004)).  To the extent that Plaintiff is alleging the Police had no lawful basis to arrest him, see the

20   discussion of false arrest below.  The Court dismisses with prejudice this cause of action and the

21   cause of action for Slander.

22        3.    False Arrest and False Imprisonment

23        The United States may be liable under the FTCA for false imprisonment or false arrest

24   committed by its law enforcement officers.  *See* 28 U.S.C. § 2680(h).  Under the FTCA, the "law of

25   the place where the act or omission occurred" applies.  *See* 28 U.S.C. § 1346(b); *Conrad v. United*

26   *States*, 447 F.3d 760, 767 (9th Cir.2006) ("In assessing the United States' liability under the FTCA,

27   we are required to apply the law of the state in which the alleged tort occurred.")  In the present

28   case, California law applies.

United States District Court

For the Northern District of California

1    The causes of action for false arrest and false imprisonment should be combined, because

2    false arrest and false imprisonment are not separate torts under California law.  *See Moore v. City &*

3    *County of San Francisco*, 5 Cal. App. 3d 728, 735 (1970); Witkin, Summary of California Law,

4    Torts § 426 (10th ed. 2005).  "A false arrest is merely one way to commit a false imprisonment."

5    *Moore*, 5 Cal. App. 3d at 735.  The elements of false imprisonment are: "(1) the nonconsensual,

6    intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period

7    of time, however brief."  *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2006) (quoting *Easton*

8    *v. Sutter Coast Hosp*., 80 Cal. App. 4th 485, 496 (2000)).

9    Plaintiff has stated a cause of action for false imprisonment against the United States.  There

10   is no dispute that elements (1) and (3) have been sufficiently alleged; only element (2) is at issue.

11   Plaintiff alleges that the arrest was a "set up" and that the VA Police "did not have probable cause"

12   to arrest him.  Exh. at 12.  He "asked them three times" what the probable cause was, to which they

13   responded they "did not need any."  *Id*.  He refutes the possibility that he was arrested because he

14   went to his appointment without police escort, since the letter informing him of the OBR only states,

15   "officers will be nearby during your visits.  They will not interfere with your visits unless you

16   become disruptive."  Exh. at 13, 28.  Construing the facts in the light most favorable to Plaintiff,

17   Plaintiff has sufficiently alleged that the Police lacked lawful privilege to arrest him.

18       4.    First Degree Criminal Assault with Malice Intended on a Disabled Person; Torture

19             and Terrorism on a Disabled Person

20   Plaintiff alleges that the VA Police "force[d] [Plaintiff's] body into the wall" of the holding

21   cell and threatened to beat him up.  Exh. at 14-15.  Plaintiff alleges that the Police drove to the Jail

22   in a manner that deliberately caused Plaintiff to bump into the vehicle's fiberglass seats and walls.

23   *Id*.  Once they arrived at the Jail, the Police allegedly made him sit in a chair in the Jail parking lot,

24   for over two hours, with his hands handcuffed behind his back, despite being repeatedly told how

25   much pain Plaintiff was in.  Exh. at 15-16, 31.  Plaintiff alleges that, as a result of the Police

26   "manhandling," the rotator cuff in Plaintiff's left shoulder was torn, needing surgery. Exh. at 10,

27   13-14.

28

Plaintiff's allegation of *criminal* assault seems to be in reference to Plaintiff's request for relief that criminal charges be filed against the policeman that "beat Plaintiff on January 30, 2012." Compl. at 10. However, the Court does not have authority to order the injunctive relief Plaintiff seeks; the decision to file criminal charges is solely within the authority of federal prosecutors.

As to Plaintiff's claim for damages, the Court construes these claims as causes of action for the torts of assault and battery. Under the FTCA, the United States may be liable for assault or battery committed by its law enforcement officers. *See* 28 U.S.C. § 2680(h).

The elements of the tort of assault are:

> (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm.

*Yun Hee So v. Sook Ja Shin,* 212 Cal. App. 4th 652, 668-69 (2013) (citing Judicial Council of Cal. Civil Jury Instructions No. 1301). The elements of the tort of battery are:

> (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff.

*Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (2009). An officer "may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." *Id.* (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004)). Therefore, in a claim of battery against an officer, the plaintiff must show the officer used unreasonable force. *See id*; *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).

Plaintiff's allegations sufficiently allege assault and battery. In particular, the alleged use of force was plausibly unreasonable, since the force was not necessary to affect arrest, prevent escape, or overcome resistance by Plaintiff, who was already handcuffed.

10

United States District Court

For the Northern District of California

1    Although the United States asserts that Plaintiff failed to allege causation, medical records

2    show he previously had a partial tear in his left shoulder, but that after the arrest, he had a full tear in

3    his left shoulder.  Exh. at 10, 13-14, 21-24.  Plaintiff has adequately alleged causation.

4        To the extent Plaintiff seeks to allege a constitutional violation under the Fourth Amendment

5    for use of excessive force,  sovereign immunity bars suits for damages against the United States for

6    Fourth Amendment violations by its officers.  *See Graham v. Connor*, 490 U.S. 386 (1989);

7    *Arnsberg v. U.S.*, 757 F.2d 971, 980 (9th Cir. 1985).  Therefore, Plaintiff has not stated a Fourth

8    Amendment claim against the United States.

9        5.    Public Humiliation

10       Plaintiff alleges that the Sheriff permitted a VA Policeman to hold the booking information

11   card and include himself in Plaintiff's booking photo, "to add to [Plaintiff's] humiliation." Exh.

12   31-32.  While the photo was being taken, the VA Policeman said "this is going to be my trophy."

13   Exh. at 31.   Plaintiff also alleges that, after the VA Police had initially handcuffed him, one of the

14   policemen took Plaintiff's driver's license out of Plaintiff's wallet and affixed it to his badge, saying

15   that "this was his trophy."  Exh. at 14.  Plaintiff states that "they injured me, and I'm mentally

16   struggling to get back on track."  Exh. at 11.

17       California does not recognize a separate cause of action for "Public humiliation," but

18   humiliation is a form of emotional distress, which may in certain circumstances support a cause of

19   action for "intentional infliction of emotional distress."  The elements of intentional infliction of

20   emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of

21   causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

22   suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

23   emotional distress by the defendant's outrageous conduct."  *Davidson v. City of Westminster*, 32

24   Cal.3d 197, 209 (1982).

25       The Court construes this claim as one for intentional emotional of distress.  Such claim is

26   sufficiently alleged for purposes of the motion to dismiss.

27

28

6.      Pain and Suffering Caused by Violent Injury

The Court dismisses this cause of action with prejudice. "Pain and suffering" is not a cause of action, but a category of damages. If the United States is found liable for causing "violent injury" to Plaintiff, Plaintiff may seek damages for the pain and suffering that resulted.

7.      Violation of Due Process

Plaintiff asserts that his Due Process rights were violated because the SFVAMC banned him from their medical center between March 2007 and July 2011 without a hearing (the "Ban"). Compl. at 5. A 2007 letter from the SFVAMC to Plaintiff states that he could not be treated at VA medical centers in San Francisco, Santa Rosa, Ukiah, San Bruno, or Eureka, unless there is "imminent danger to your life." Opp. to U.S. Exh. at 22. Plaintiff also asserts that his Fifth Amendment Due Process rights were violated because the SFVAMC placed on him the OBR and entered in the federal computer database the behavioral flag without a hearing. Compl. at 4-5; 7-8.

Plaintiff requests both damages and injunctive relief. *See* Compl. at 10; Exh. at 2. Sovereign immunity is not a bar to Plaintiff's request for injunctive relief because the Administrative Procedure Act waives sovereign immunity:

> [a]n action . . . seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .

5 U.S.C. § 702. *See also The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (Section 702 "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable.")

a.      The Ban

To the extent Plaintiff seeks damages for the Ban as violative of his constitutional Due Process rights, that claim (like the Fourth Amendment claim) is barred by sovereign immunity. *See Holland v. Watt*, 708 F.2d 1399 (9th Cir. 1988) (sovereign immunity barred damages action against the federal government based on a violation of Due Process rights).

To the extent Plaintiff seeks injunctive relief for the Ban, that claim is moot. Although defendants did not raise the issue of mootness, courts "must raise issues concerning [their] subject

United States District Court

For the Northern District of California

matter jurisdiction sua sponte. *Wakefield v. Thompson,* 177 F.3d 1160, 1162 (9th Cir.1999). This includes mootness. *Dittman v. California,* 191 F.3d 1020, 1025 (9th Cir.1999)." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). "A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' A key inquiry is whether the court is 'able to grant effective relief.'" *McBride Cotton and Cattle Corp. v. Veneman,* 290 F.3d 973, 982 (9th Cir. 2002) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982)).

Plaintiff's claim is moot because the Ban is no longer in place. Moreover, the regulation that authorized the Secretary to issue such bans is no longer effective. Plaintiff was banned from the SFVAMC in 2007 pursuant to the then 38 C.F.R. § 17.106. *See* Opp. to U.S. Exh. at 22. This section was amended in 2010 to what is now 38 C.F.R. § 17.107. *See* 75 F.R. 69881-01 (Nov. 16, 2010) (explaining the reason for the amendment); 76 F.R. 37204 (June 24, 2011) (redesignating 38 C.F.R. § 17.106 as 38 C.F.R. § 17.107). The amended version expressly provides that an OBR must be "narrowly tailored to address the patient's disruptive behavior and avoid undue interference with the patient's care" and that the VA "will continue to offer the full range of medical care to which a patient is eligible." 38 C.F.R. § 17.107. Thus, this claim is moot.

    b.    The OBR

Again, to the extent Plaintiff seeks to recover damages in connection with the OBR as violative of his constitutional rights, that claim is barred by sovereign immunity.[2]

As to Plaintiff's request for injunctive relief that his behavioral flag be removed from the VA computer and he be issued a medical card allowing him to receive care outside the VA, the United States asserts that Section 511 of Title 38 of the United States Code precludes the Court from exercising jurisdiction over the OBR. *See* U.S. Mot. at 5-9. Section 511(a) gives the Secretary of Veterans Affairs exclusive authority to "decide all questions of law and fact necessary to a decision

---

[2] There is no indication that the VJRA, discussed below, waives sovereign immunity for damages. The VJRA lists only non-monetary forms of relief when defining the scope of review of the Veterans Court: "decide all questions of law and fact . . . "; "compel action by the Secretary . . . "; and "hold unlawful and set aside decisions . . . ." 38 U.S.C. § 7261(a). Since a "waiver of sovereign immunity cannot be implied but must be unequivocally expressed," (*United States v. Mitchell*, 445 U.S. 535, 538 (1980)) the VJRA does not waive sovereign immunity for money damages.

by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Section 511(a) also precludes judicial review of a "decision of the Secretary as to any such question," subject to four exceptions. The relevant exception here is the review afforded under the Veterans Judicial Review Act ("VJRA"). The review process is as follows:

> Under the VJRA, after the Secretary makes a decision on the award of benefits, a veteran may appeal it to the Board of Veterans' Appeals. *See* 38 U.S.C § 7105. The Board's decision constitutes the Secretary's final determination, *see id.* § 7104, which may then be appealed to the Court of Veterans Appeals [Court of Appeals for Veterans Claims], an Article I court established by the VJRA with "exclusive jurisdiction" to review the decisions of the Board of Veterans' Appeals. *Id.* § 7252(a). Decisions of the Court of Veterans Appeals may then appealed, but only to the Federal Circuit. *See id.* § 7292.

*Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (some internal citations omitted).

The Ninth Circuit has established a two-part test to determine whether a district court is precluded from reviewing a decision of the Secretary. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1022-23 (9th Cir. 2012) (en banc). First, "§ 511 precludes jurisdiction over a claim if it requires the district court to review 'VA decisions that relate to benefits decisions,' including 'any decision made by the Secretary in the course of making benefits determinations.'" *Id.* at 1025 (quoting *Beamon v. Brown*, 125 F.3d 965, 971 (6th Cir. 1997); *Broudy v. Mather*, 460 F.3d 106, 115 (D.C. Cir. 2006)). In particular, a district court lacks jurisdiction to hear a claim if it would require reviewing "decisions affecting the provision of benefits to [a] particular claimant[]." *Id.* at 1034. Any judicial review of claims precluded by Section 511 is conducted by the Court of Appeals for Veterans Claims ("Veterans Court") and further by the Federal Circuit. *See id.* at 1023.

Second, if Section 511 does not preclude jurisdiction, a district court may still lack jurisdiction because the claim is within the exclusive jurisdiction of the Veterans Court. *See id.* at 1022-23. In *Veterans for Common Sense*, the Ninth Circuit had left open the question of whether the Veterans Court (and the Federal Circuit on appeal from the Veterans Court), had exclusive jurisdiction to review facial constitutional challenges by individual plaintiffs. *See id.* at 1034. However, the Ninth Circuit subsequently held that it does have jurisdiction to hear a facial constitutional challenge, because this "would not require consideration of 'decisions affecting the

1  provision of benefits to any individual claimant[].'" *Recinto v. U.S. Dept. of Veterans Affairs*, 706

2  F.3d 1171, 1176 (9th Cir. 2013) (quoting *Veterans for Common Sense*, 678 F.3d at 1034).

3        Plaintiff asserts both an as-applied factual and a facial constitutional challenge to the OBR.

4  Applying the first part of the test to both challenges, the question is whether the OBR is "a decision

5  by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," in

6  short, a "benefits decision." 38 U.S.C. § 511(a). An OBR is issued pursuant to 38 C.F.R. § 17.107.

7  Section 17.107 authorizes a chief of staff of a VA medical center to restrict the "time, place, and/or

8  manner of the provision of a patient's medical care" if the chief of staff determines that "the

9  patient's behavior at a VA medical facility has jeopardized or could jeopardize the health or safety

10 of other patients, VA staff, . . . ." 38 C.F.R. § 17.107(b). The restrictions may include "requiring

11 police escort" or "authorizing VA providers to terminate an encounter immediately if certain

12 behaviors occur." *Id*. Section 17.107 notes: "Although VA may restrict the time, place, and/or

13 manner of care under this section, VA will continue to offer the full range of needed medical care to

14 which a patient is eligible . . . ." 38 C.F.R. § 17.107, Note to § 17.106 (§ 17.106 was redesignated as

15 § 17.107 in 76 F.R. 37204, June 24, 2011). Section 17.107(b) provides for an appeal of an OBR to

16 the "Network Director" within 30 days of the effective date of the order. 38 C.F.R. § 17.107(e).

17        There does not appear to be any legal authority that directly addresses whether (and under

18 what circumstances) an OBR is a benefits decision within the meaning of Section 511. Courts have

19 addressed decisions by the Secretary under 38 U.S.C. § 5904(b) to suspend attorneys from practice

20 before the VA and under 38 U.S.C. § 5502 to appoint fiduciaries. The Federal Circuit has held that

21 Section 5904(b) is not a "law that affects the provision of benefits," because the "relationship

22 between the canceling of [an attorney] and the securing of benefits by his clients is far too

23 attenuated." *Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005). On the other hand, courts

24 have held that the Secretary's appointment of a fiduciary to receive benefits on behalf of a

25 beneficiary is a benefits decision. *See Judkins v. Veterans Admin*., 415 F. Supp. 2d 613, 619-620

26 (E.D.N.C. 2005); *Ramnarain v. U.S. Veterans Admin.*, 2012 WL 1041664 at *2-*3 (E.D.N.Y. Mar.

27 28, 2012). Thus, a decision which only incidentally affects benefits in a collateral manner does not

28

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    fall within the purview of Section 511, whereas a decision which directly affects the handling and

2    receipt of benefits does.

3           The OBR, under this analysis, is not a benefits decision.  The OBR did not deprive or limit

4    the substantive benefits to which the Plaintiff was entitled; it did not materially affect the manner in

5    which his benefits would be received.  The OBR only required that he report to the Police upon

6    entry into the VA premises to be escorted to his appointment.  Any impact on his entitlement to

7    benefits is collateral and incidental.  Hence, Section 511 does not bar his request to remove the

8    behavior flag imposed by the OBR.

9           On the other hand, Plaintiff's request that the VA be ordered to give him a medical card

10   allowing him to receive medical care outside the VA is directly related to the provision of benefits

11   and falls within the purview of Section 511.  This Court has no jurisdiction to entertain this

12   requested relief.

13                          i.      As-Applied Factual Challenge to the OBR

14          Although Section 511 does not deprive the Court of jurisdiction, Plaintiff's factual challenge

15   is barred because he has failed to exhaust his administrative remedies.  District courts have

16   discretion to apply the "judicially created doctrine of exhaustion" if

17              (1) agency expertise makes agency consideration necessary to
                generate a proper record and reach a proper decision; (2) relaxation of
18              the requirement would encourage the deliberate bypass of the
                administrative scheme; and (3) administrative review is likely to allow
19              the agency to correct its own mistakes and to preclude the need for
                judicial review.
20

21   *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v.*

22   *United States,* 402 U.S. 479, 484 (1971)).  "When a claim . . . depends ultimately on the careful

23   gathering and analysis of relevant facts, the interest in full airing of the facts within the

24   administrative system is prominent."  *McGee*, 402 U.S. at 490.  In *McGee*, the Supreme Court

25   applied the exhaustion doctrine to a draft registrant who failed to pursue administrative remedies to

26   appeal his reclassification by the Selective Service from a conscientious objector to being eligible

27   for draft.  *Id.* at 490-91.  In so holding, the Court distinguished *McKart v. United States*, 395 U.S.

28   185 (1969), on the grounds that the issue in *McKart* was a question solely of statutory interpretation,

16

1    not of fact, so that "its resolution would not have been aided by the exercise of special

2    administrative expertise." *Id*. at 485.

3            Here, Plaintiff should have appealed the OBR to the "Network Director" as provided under

4    Section 17.107(e) and as instructed in the letter to Plaintiff informing him of the OBR. *See* Exh. at

5    28. Plaintiff's challenge to the OBR involves questions of fact over which the VA has special

6    expertise to resolve. If, as Plaintiff asserts, the reasons for the OBR and behavioral flag were "all

7    fabricated," an appeal to the Network Director would have contributed to a proper record and

8    decision. Plaintiff, and those similarly situated, should not be encouraged to bypass the

9    administrative scheme established by the VA. There is no showing that review by the Network

10   Director would have been futile. Thus, the exhaustion doctrine bars Plaintiff's as applied challenge

11   to the OBR.

12                       ii.      Facial Constitutional Challenge

13           To the extent Plaintiff seeks injunctive relief against the structural aspect of the OBR

14   permitting its imposition without a hearing, the Court construes this as a facial challenge. The Court

15   has jurisdiction to hear such a facial constitutional challenge. *See Recinto*, 706 F.3d at 1176.

16           The Court finds on the merits, however, that the OBR does not implicate a property or liberty

17   interest that is protected by the Fifth Amendment. Due Process requires that "a deprivation of life,

18   liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of

19   the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542-43 (1985) (quoting *Mullane v.*

20   *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Due Process protects such property

21   interests as receiving welfare (*see Goldberg v. Kelly*, 397 U.S. 254 (1970)) or disability benefits (*see*

22   *Mathews v. Eldridge*, 424 U.S. 319 (1976)), and in certain cases, continuing government

23   employment (*see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), *but see Board of*

24   *Regents of State Colleges v. Roth*, 408 U.S. 563 (1992)). "Liberty" protected by procedural due

25   process

26                   denotes not merely freedom from bodily restraint but the right of the
                     individual to contract, to engage in any of the common occupations of
27                   life, to acquire useful knowledge, to marry, establish a home and bring
                     up children, to worship God according to the dictates of his own

28

17

conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572* (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

The OBR does not implicate a property interest protected by Due Process, since it does not substantively limit the medical care a patient receives. *See* 38 C.F.R. § 17.107. Similarly, it does not implicate a liberty interest as it merely requires police escort to appointments; this restraint is limited and its duration is brief. This is far from the bodily restraint entailed in criminal detention (*see Hamdi v. Rumsfeld*, 542 U.S. 507 (2004)) or civil commitment (*see Addington v. Texas*, 441 U.S. 418 (1979)) which do implicate Due Process. The OBR does not implicate the kind of fundamental right described in *Roth*'s definition of liberty. Thus, Plaintiff has failed to state a facial Due Process claim. Because a property or liberty interest is lacking, there is no need for the Court to consider whether a hearing is called for under *Mathews v. Eldridge.*

For the reasons stated above, the Due Process claim is dismissed with prejudice.

D.    <u>Causes of Action Against the CCSF</u>

The Complaint does not clearly state which causes of action are alleged against the CCSF. The claim form submitted to the CCSF lists False arrest; Public humiliation; False imprisonment; First degree criminal assault with malice intended on a disabled person; and Pain and suffering. *See* Exh. at 30. Under the Government Claims Act, Govt. Code § 810 *et seq.*, "a plaintiff may not maintain an action for money or damages against a public entity unless a written claim has been presented to the public entity." *Connelly v. County of Fresno*, 146 Cal. App. 4th 29 (2006). However, the requirements of the Government Claims Act are treated with more lenience than the requirements of the FTCA, and under certain circumstances, compliance may be waived or excused. *See State of California v, Superior Court (Bodde)*, 32 Cal. 4th 1234, 1245 (2004).

The Court dismisses with prejudice the causes of action for (1) Staging conflict situations in order to maintain a warning flag in a national computer; (2) Violation of due process; and (3) Slander, because the CCSF had nothing to do with the behavioral flag or the OBR, and Plaintiff  did not give notice of these claims to the CCSF.

United States District Court

For the Northern District of California

1    To the extent that the cause of action for (7) First degree criminal assault can be construed as

2    one for the tort of assault, Plaintiff fails to state a claim because he does not allege that any

3    employee of the CCSF threatened him with assault or battery.  Plaintiff has leave to amend to allege

4    assault.  The cause of action for (8) Pain and suffering caused by violent injury is dismissed with

5    prejudice, as above, because this is not a cause of action but a category of damages.

6    The Court construes (5) Public humiliation as a cause of action for intentional infliction of

7    emotional distress.  However, Plaintiff has failed to state a sufficient claim on this count against the

8    CCSF.  The alleged perpetrator of the humiliation was the VA police officer.  At most, the Sheriff

9    failed to intervene in the process of taking the booking photo.  This alleged inaction falls far short of

10   constituting "extreme and outrageous conduct."  This claim is therefore dismissed without prejudice.

11                      a.      Torture and Terrorism on a Disabled Person

12   Plaintiff does not allege that the CCSF used excessive force against him, only that the Sheriff

13   failed to intervene.

14   To the extent Plaintiff asserts CCSF employees violated his constitutional rights, an officer

15   may in some circumstances be liable for a Fourth Amendment violation for failure to intervene.  *See*

16   *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd in part on other grounds*, 518

17   U.S. 81 (1996).  However, as a local government, the CCSF cannot he held liable for a constitutional

18   violation by an employee under Section 1983, unless the violation was committed in the execution

19   of the CCSF's "policy or custom," which Plaintiff does not allege.  *See Monell v. Department of*

20   *Social Services of New York*, 436 U.S. 658, 694 (1958).  The Court dismisses this cause of action.

21   Plaintiff has leave to amend to allege battery or violation of the Fourth Amendment, to the extent

22   that he can allege facts that support the elements of the relevant cause of action.

23                      b.      False Arrest/Imprisonment

24   Plaintiff fails to state a claim of false arrest/imprisonment against the CCSF, because a public

25   entity cannot be liable for false imprisonment or false arrest committed by an employee officer if the

26   arrest was lawful or the officer had reasonable cause to believe the arrest was lawful.  *See* Govt.

27   Code Section 847(b).  Here, Plaintiff does not allege that the Sheriff had reason to believe the VA

28   Police unlawfully arrested him.  Plaintiff points to the fact that no charges were eventually filed

**United States District Court**
For the Northern District of California

1  against him, but this is insufficient to plausibly overcome Section 847(b). The Court dismisses this

2  cause of action with leave to amend, to the extent that Plaintiff can allege facts overcoming the

3  CCSF's immunity under Section 847(b).

4  E.     Summary

5         1.     Causes of Action Against the United States (Damages)

6         The Court dismisses with prejudice the following causes of action: (1) Staging conflict

7  situations in order to maintain a warning flag in a national computer; (2) Violation of Due Process;

8  (3) Slander; and (8) Pain and suffering caused by violent injury.

9         The Court combines the causes of action for (4) False imprisonment and (6) False arrest.

10 The Court construes the causes of action for (7) First degree criminal assault with malice intended

11 on a disabled person and (9) Torture and terrorism on a disabled person as causes of action for

12 assault and battery. The Court construes (5) Public humiliation as a cause of action for intentional

13 infliction of emotional distress. Plaintiff has stated claims against the United States for assault,

14 battery, false imprisonment, and intentional infliction of emotional distress.

15        2.     Causes of Action Against the United States (Injunction)

16        The Court dismisses any claim for injunctive relief with respect to the Ban as moot. The

17 claim for injunctive relief to obtain a medical card is dismissed with prejudice. The claim for

18 injunctive relief to remove the behavioral flag is dismissed without prejudice.

19        3.     Causes of Action Against the CCSF (Damages)

20        The Court dismisses with prejudice the following causes of action against the CCSF: (1)

21 Staging conflict situations in order to maintain a warning flag in a national computer; (2) Violation

22 of due process; (3) Slander; and (8) Pain and suffering caused by violent injury.

23        The Court construes (5) Public humiliation as a cause of action for intentional infliction of

24 emotional distress.

25        The Court dismisses with leave to amend the cause of action for false arrest/imprisonment

26 and intentional infliction of emotional distress.

27

28

The Court dismisses with prejudice the causes of action for (7) First degree criminal assault and (9) Torture and terrorism on a disabled person.  Plaintiff has leave to amend to allege assault, battery, and violation of the Fourth Amendment.

F.      Guidelines for Amendment

If Plaintiff amends the Complaint, the amendment shall be in accordance with the above and the following guidelines.

First, all factual allegations must be put in the complaint.  Currently, Plaintiff alleges new facts in the Oppositions to the United States and the CCSF.  For example, new facts are alleged about what happened in the holding cell and what happened between the VA Police appearing and handcuffing Plaintiff.  *See* Opp. to U.S. at 11-12.  In addition, factual allegations should be in the complaint itself, rather than in exhibits.  Currently, it is difficult to understand from the Complaint alone what Plaintiff is alleging.  Many factual allegations are contained in a letter to Judge Beeler, which is in the Exhibits.  And the Complaint contains no factual allegations against the CCSF; they are to be gleaned from a claim form Plaintiff submitted to the CCSF's Claims Division, which is also in the Exhibits.  (Some of the other documents, such as medical records and correspondence from the VA, may be left as exhibits.)

Second, all legal bases for claims must be put in the complaint.  Currently, some legal bases – such as Penal Code Sections 142, 145, 147, 836, 840, 4006 – are raised for the first time in the Oppositions.  *See* Opp. to CCSF at 5.  At the same time, Plaintiff is advised that if he bases a cause of action on a Penal Code provision, he should also state the basis of a private right of action.

Third, Plaintiff shall clearly state each cause of action, the party or parties against whom it is alleged, the legal basis for the cause of action, and the facts that support the cause of action. Plaintiff must identify the alleged wrongdoing committed by each named Defendant.

Finally, the complaint and any attachment should be as short as possible while complying with the above.  Currently, the Exhibits total 77 pages, and include two copies of the letter to Judge Beeler, three copies of the letter from the SFVAMC informing Plaintiff of the OBR, four copies of a letter Plaintiff wrote to a person in New Orleans, which moreover, is not relevant to this suit, etc. The length and lack of organization make the Complaint and Exhibits difficult to follow, and thus

United States District Court

For the Northern District of California

the Complaint fails to satisfy the requirement of Federal Rules of Civil Procedure 8(a) that the Complaint be a "short and plain statement" of the claims.

The Court **GRANTS** the CCSF's motion to dismiss with leave to amend.  The Court **GRANTS IN PART AND DENIES IN PART** the United States' motion to dismiss with leave to amend.  Plaintiff has thirty (30) days to file an amended complaint.

This order disposes of Docket Nos. 14 and 22.


IT IS SO ORDERED.


Dated:  December 11, 2013

_____
EDWARD M. CHEN
United States District Judge