UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ELLIS JOHNSON,<br>　　　　Plaintiff,<br>　　v.<br>UNITED STATES OF AMERICA,<br>　　　　Defendant. | Case No. 13-cv-02405-JD<br><br>**ORDER RE MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 188 |

Pro se plaintiff James Ellis Johnson has sued the United States of America over an alleged incident of excessive force at a VA hospital. After several pleadings challenges, the case now consists of claims for assault, battery, false arrest, and intentional infliction of emotional distress against the United States under the Federal Tort Claims Act ("FTCA"). Dkt. No. 83 (amended complaint); Dkt No. 155. The claims arise from plaintiff's arrest for disorderly conduct and refusing to obey a police officer at the San Francisco Veterans Administration ("VA") Medical Center on January 30, 2012. The United States has moved for summary judgment on the false arrest claim on the grounds that the VA police officers had reasonable cause and lawful privilege to arrest him on that day. Dkt. No. 188. Plaintiff has filed a number of papers with the Court opposing the motion or urging that the matter not be decided because discovery is not complete. Dkt. Nos. 205, 239, 240, 241. The Court finds that the motion is ripe for determination and suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b). Summary judgment is denied because genuine issues of material fact remain for trial.

## BACKGROUND

Johnson arrived at the VA Medical Center for an appointment with Dr. Meg Pearson on January 30, 2012. He checked in with VA police at 10:28 a.m., as he was required to under the terms of an "Order of Behavioral Restriction" or "OBR." Dkt. No. 188-2, Exh. B at 5; Dkt. No.

126 at ECF 13-14. The order advised Johnson that "officers will be nearby during your visits," but did not specifically require him to have police escort him to his appointments. *Id.* Police did not escort him to his appointment during this visit. *See* Dkt. No. 188-1, Exh. A at 36:19-20.

According to Johnson,[1] he checked in at the doctor's office and sat in the waiting area. *Id.* at 37:6-8. After taking his temperature and weighing him, the nurse asked whether he had checked in with the police, and he said he had done so. *Id.* at 37:15-21. Then the nurse said "something about escorting," and Johnson objected that "there's nothing in my instructions about me being escorted." *Id.* at 37:22-24. Johnson says the nurse then called Dr. Pearson and told her Johnson was checked in but without a police escort. *Id.* at 38:16-24; Dkt. No. 205 at 2. Johnson was taken to sit outside Dr. Pearson's examination room door. Dkt. No. 188-1, Exh. A at 38:25-39:3. When Dr. Pearson called him into the examination room, she asked Johnson again whether he had checked in with the police as required. *Id.* at 39:8-15; Dkt. No. 188-4 ¶ 10.

Johnson was frustrated by Dr. Pearson's suggestion he had not properly followed the OBR protocol, and began to challenge her for focusing on that instead of his medical care. *See* Dkt. No. 188-1, Exh. A at 39-41. He denies "yelling" or "that my voice got loud." *Id.* at 41:13-22. The doctor quickly ended the appointment and led him into the hallway, where Johnson says they were met by the VA police. *Id.* at 40:16-19, 41:4-8, 44:5-9. Johnson believes the police were called because he had appeared for his appointment without an escort, not because he was being disruptive, and that the arrest was staged and a set-up. *See, e.g.*, *id.* at 44:5-15; Dkt. No. 241 at 2; Dkt. No. 239 at 4. According to Johnson, the police prevented him from leaving the hospital. Dkt. No. 188-1, Exh. A at 46. Johnson says he asked the police several times "what is your probable cause for stopping me," before Officer Cowin told him "I don't need one." *Id.* at 46:9-15. He then called Officer Cowin a racist. *Id.* at 46:15-16. Johnson alleges that Officer Cowin immediately grabbed, cuffed, arrested him, and subjected him to a "lock hold." *Id.* at 47:12-14, 49:10-17, 50:17-20. In Johnson's version of events, he became loud only after the arrest because

---

[1] Because plaintiff is pro se, the Court has relied on plaintiff's sworn deposition testimony, provided by defendant as an exhibit to its motion, Dkt. No. 188-1, Exh. A; *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record").

1  he was in a painful position that felt like "you got a man ripping your arms apart." *Id*. at 46:17-20,
2  50:2-6. He does not recall any exchange with Officer Neeley before the arrest. *Id*. at 47:3-6 ("The
3  exchange was solely with Cody. Me and Cody was in tune, just like me and you are in tune here,
4  and Neel[e]y was standing to one side.")

5        Johnson claims that the VA maintained inaccurate conditions for his visits that gave VA
6  staff and police room to harass him and provoke his arrest. His OBR stated that "officers will be
7  nearby during your visits. They will not interfere with your visits unless you become disruptive.
8  If you become disruptive, VA Police will immediately escort you from the Medical Center
9  grounds and you will not be permitted to return that day, except for evaluation of potentially life-
10 threatening emergencies." Dkt. No. 126 at ECF 13. Johnson contends the VA had records in its
11 computers erroneously advising police and staff that he "must have police escort to all
12 appointments." Dkt. No. 240-1 at ECF 30 (restriction added to Johnson's record after January 30,
13 2012 arrest); Dkt. No. 188-1, Exh A at 79-80 (Johnson contends the officers acknowledged having
14 two sets of instructions). Johnson alleges that this mistake caused or at least allowed VA
15 personnel to harass him about not having a police escort on the day of his arrest. The parties are
16 completing some focused discovery of VA police journal entries that Johnson believes will show
17 that the VA had not insisted on a police escort during other visits. *See* Dkt. No. 239 at 6. The
18 Court ordered this discovery on March 16, 2016. Dkt. No. 263.

19       Defendant's account of the facts differs greatly. According to Dr. Pearson, Johnson
20 became upset and raised his voice during the office visit. Dkt. No. 188-4 ¶ 10. She claims
21 Johnson's agitation increased and he began yelling at the police as they arrived. *Id*. ¶ 11. The VA
22 police officers do not explain the process by which they were dispatched to the scene, just that
23 they "were dispatched to station ourselves nearby during Mr. Johnson's appointment." Dkt. No.
24 188-2 ¶ 6; *id*., Exh. B at 6 (VA police journal entry written more than four hours after the arrest
25 states Johnson "was reported disorderly and refused to cooperate with lawful instructions from VA
26 police"). When they met Johnson and Dr. Pearson, Officer Cowin says he tried to defuse the
27 situation and asked Johnson to lower his voice, but Johnson continued to yell and call him a racist,
28 disturbing other people in the clinic. *Id*. ¶¶ 7-10; Dkt. No. 188-4 ¶ 11. When Officer Neeley tried

1  to defuse the situation, Johnson yelled at him and "took a sudden step towards Officer Neeley,
2  closing the distance to less than three feet." Dkt. No. 188-2 ¶ 11. Officer Cowin worried the
3  situation might escalate into violence so he arrested and handcuffed Johnson. *Id.* ¶ 12.
4      Defendant has moved for summary judgment only on the false arrest claim, on the grounds
5  that the VA police had reasonable cause for the arrest. Dkt. No. 188.

## DISCUSSION

### I. STANDARDS

The Court may grant summary judgment on a claim or defense only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A moving party without the ultimate burden of persuasion at trial -- usually, but not always, a defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To meet this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). The "'evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Ninth Circuit has cautioned that even when, as here, the court will be the ultimate trier of fact, *see* 28 U.S.C. § 2402, "courts must not rush to dispose summarily of cases -- especially novel, complex, or otherwise difficult cases of public importance -- unless it is clear that more complete factual development could not possibly alter the outcome and that the credibility of the witnesses' statements or testimony is not at issue." *TransWorld Airlines, Inc. v. Am. Coupon Exchange, Inc.*, 913 F.2d 676, 684–85 (9th Cir. 1990) ("Even when the expense of further proceedings is great and the moving party's case seems to the court quite likely to succeed,

4

1  speculation about the facts must not take the place of investigation, proof, and direct
2  observation.")
3        The FTCA provides a limited waiver of the sovereign immunity of the United States "for
4  injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee
5  of the Government while acting within the scope of his office or employment, under
6  circumstances where the United States, if a private person, would be liable to the claimant in
7  accordance with the law of the place where the act or omission occurred." 28 U.S.C. §
8  1346(b)(1)). The FTCA applies where state law would impose liability on private persons under
9  similar circumstances. "Even if the conduct entails uniquely governmental functions, the court is
10 to examine the liability of private persons in analogous situations." *Tekle v. United States*, 511
11 F.3d 839, 852 (9th Cir. 2007) (citing *United States v. Olson*, 546 U.S. 43, 45-46 (2005)).

## II.  THE FALSE ARREST CLAIM

Although this case is brought under the FTCA, California state law governs plaintiff's substantive claims. *Xue Lu v. Powell*, 621 F.3d 944, 945-46 (9th Cir. 2010) ("The FTCA incorporates the law of the state in which the tort is alleged to have occurred"). Under California law, false arrest and false imprisonment describe the same "unlawful violation of the personal liberty of another." Cal. Penal Code § 236; *see Tekle*, 511 F.3d at 854. The elements of the claim are: "'(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'" *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir.2011) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)). Defendant moves for summary judgment on the ground that the arrest was privileged because the officers had "reasonable cause to believe" Johnson had committed a misdemeanor in their presence. Dkt. No. 188 at 7.

As an initial matter, defendant's argument is not in full harmony with governing law. In *Tekle*, the Ninth Circuit explained that the acts of a federal officer in the FTCA context must be evaluated under standards applicable to a private person, and "a private person may only arrest someone for a misdemeanor when the offense actually has been committed or attempted in his presence." *Tekle*, 511 F.3d at 854 (citing *Hamburg v. Wal-Mart Stores, Inc.*, 116 Cal. App. 4th

5

497 (2004)). "Reasonable cause to believe that a misdemeanor has been committed is not sufficient." *Id*.

Defendant nevertheless suggests that Johnson's arrest would have still been proper under this higher standard, since the officers allegedly "witnessed the disturbance caused by Mr. Johnson," his "loud and unreasonable noise" and conduct "disrupting the clinic," and arrested him after "he threatened violence when he closed the distance to Officer Neeley." Dkt. No. 188 at 8. Based on these acts that took place in front of the officers, defendant suggests there is no material dispute that Johnson violated California Penal Code Section 415(2) and further violated Section 148(a)(1) when he refused to obey the officers' orders to quiet down and stop disrupting the clinic. *Id*. at 8-9; Dkt. No. 233 at 1.

But this ignores plaintiff's version of the facts. *See Tolan*, 134 S.Ct. at 1863 (the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotation omitted). Taking Johnson's deposition testimony as true, and viewing the facts in the light most favorable to him, there is a genuine dispute as to whether Johnson committed a misdemeanor in front of the officers before they arrested him. Johnson denies yelling at Dr. Pearson in her office, but even if he had, the officers would not have cause to arrest him for that because they were not present at that time. *See Tekle*, 511 F.3d at 854. Johnson also effectively denies that he "willfully resist[ed], delay[ed], or obstruct[ed]" the officers in the performance of their duties before his arrest. *See* Cal. Penal Code § 148(a)(1). In Johnson's view of the facts, the police blocked his intended exit from the building without cause or explanation. Dkt. No. 188-1, Exh. A at 46. And Johnson contradicts the officers' accounts that he charged "within three feet" of Officer Neeley before the arrest. Johnson says he did not have an exchange with Officer Neeley before the arrest at all. *Id*. at 47:3-4. Johnson also denies "maliciously and willfully disturb[ing] another person by loud and unreasonable noise" before his arrest. *See* Cal. Penal Code § 415(2). He says he did not start yelling until after he was grabbed, arrested and handcuffed, when the "lock hold" applied by Officer Cowin wrenched his shoulder painfully. Dkt. No. 188-1, Exh. A at 46, 50.

For the most part, then, Johnson contests the facts that defendant asserts for summary judgment. According to Johnson, he was not yelling, not loud, not causing a commotion, and did not charge Officer Neeley before the arrest. The only point at which the parties' stories coincide is in that Johnson concedes he called Officer Cowin a racist immediately preceding the arrest. But calling a police officer a racist, without more, does not establish a violation of Penal Code Sections 415(2) or 148(a)(1). Because the Court must assume that Johnson's account is true, and may not weigh the credibility of the different accounts on summary judgment, the Court determines that Johnson has raised genuine issues of material fact regarding the officers' liability for false arrest.

## CONCLUSION

Defendant's motion for summary judgment is denied. The false arrest claim will proceed to bench trial. The Court terminates plaintiff's related filings in Docket Nos. 239, 241 as moot.

**IT IS SO ORDERED.**

Dated: April 1, 2016

JAMES DONATO
United States District Judge